Robin L. Cohen (rcohen@mckoolsmith.com)
Kenneth H. Frenchman (kfrenchman@mckoolsmith.com)
Alexander M. Sugzda (asugzda@mckoolsmith.com)
MCKOOL SMITH, P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001

*Attorneys for Plaintiff SCHJS LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SCHJS LLC, <br><br> Plaintiff, <br><br> v. <br><br> HISCOX INSURANCE COMPANY INC. and GREAT NORTHERN INSURANCE COMPANY, <br><br> Defendants. | Civil Action No.: <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff SCHJS LLC ("SCHJS"), by and through its undersigned attorneys, as and for its Complaint against Hiscox Insurance Company Inc. ("Hiscox") and Great Northern Insurance Company ("Great Northern", and together with Hiscox, "Defendants"), allege as follows:

## INTRODUCTION

1. This diversity action for breach of contract and declaratory judgment arises out of Defendants' failure and refusal to fulfill their insurance coverage obligations with respect to missing wine and whiskey.

2. SCHJS is an entity formed by Joseph J. Sitt, Chief Executive Officer and Chairman of the Board of Directors of Thor Equities LLC ("Thor"), and Joshua Schupak, an individual from whom Mr. Sitt had for many years purchased wine and whiskey in the past.

SCHJS is a business entity formed to acquire, store, and eventually resell certain property, specifically, whiskey and wine.

3. Mr. Schupak, as the expert in this area, submitted lists to Mr. Sitt of whiskey and wine he intended to purchase for SCHJS, and Mr. Sitt would in turn fund SCHJS's bank account for each purchase; some purchases Mr. Sitt funded entirely, others only a percentage, with Mr. Schupak to contribute the remainder.

4. Through this process, Mr. Schupak purported to have assembled an impressive collection of property for SCHJS: 10,035 bottles of whiskey, and 880 bottles and 6 barrels of wine, purchased for $7,445,852.  In total, Mr. Sitt contributed approximately $4.6 million toward the purchase of the SCHJS collection.  The investment was sound: the collection Mr. Schupak purported to have purchased has been appraised at a current value of $9.84 million for the whiskey and $518,000 for the wine, an appreciation on the total collection of nearly 40%.

5. From prior dealings, Mr. Sitt knew that Mr. Schupak could be disorganized, so by late 2017 Mr. Sitt began requesting an inventory from Mr. Schupak, including the location of the bottles.

6. Mr. Schupak provided some information, but despite repeated follow up from Mr. Sitt and other Thor employees acting on Mr. Sitt's behalf, Mr. Schupak never provided a complete inventory of the collection confirming the bottles had been purchased and where they were being stored.

7. In the summer of 2018, Thor's risk manager, Raizy Berkowitz, who had been assigned to oversee SCHJS on Mr. Sitt's behalf, began a process of consolidating all of the SCHJS collection in one warehouse and inventorying what was assembled.  The results of the inventory were shocking: only 4,293 of the 10,035 whiskey bottles allegedly purchased by Mr.

Schupak could be located. Based on the information Mr. Schupak provided to Mr. Sitt, those 4,293 bottles were purchased for $2,571,708. The remaining bottles could not be found.

8. When Mr. Schupak was still in contact with Mr. Sitt and Ms. Berkowitz regarding the SCHJS collection, he contended that Ms. Berkowitz's inventory process was flawed; that all bottles could be accounted for; and that certain bottles were stored in Europe but could not be shipped until the weather improved, among other various and sundry excuses. However, Mr. Schupak has gone "radio silent" with Mr. Sitt and Ms. Berkowitz regarding the collection, and no additional bottles of whiskey have been located.

9. What Mr. Sitt knows for sure is that he contributed more than $4.6 million to SCHJS, yet SCHJS can only locate property purchased for approximately $2.5 million. The simplest explanation is that Mr. Schupak simply stole the balance of the funds Mr. Sitt provided, or that he used the funds to buy whiskey or wine that he then stole from SCHJS.

10. Fortunately, SCHJS purchased insurance to provide coverage for just such a loss. It is an insured under a commercial crime policy issued by Hiscox with coverage for employee theft, and specifically provides that single-purpose investment entities such as SCHJS are insured, and that theft by joint-venture partners is considered employee theft.

11. However, there is still the possibility that Mr. Schupak used the funds Mr. Sitt contributed, or that he himself contributed, to actually buy whiskey and wine which was either stolen from SCHJS or is simply missing without explanation. SCHJS purchased insurance for those contingencies too in the form of a valuable articles policy issued by Great Northern.

12. Once the inventory process was nearly complete and it was clear a loss had occurred, SCHJS promptly reported the loss to both of its carriers, expecting coverage as applicable under the two policies.

3

13. Instead, Defendants have not provided a dime in coverage to SCHJS. SCHJS fully cooperated with Defendants' investigations, providing hundreds of emails, inventories, and other relevant documents to both Defendants. However, it became clear that each Defendant was only "investigating" potential avenues to deny coverage. Finally, more than one year after the loss was reported, both insurers denied any coverage obligation to SCHJS.

14. SCHJS suffered a significant loss due to the rogue acts of Mr. Schupak and now turns to this Court to force Defendants to honor their coverage obligations under the policies they sold in order to make SCHJS whole.

## THE PARTIES

15. Plaintiff SCHJS LLC is a limited liability company formed under the laws of Delaware, with its principal place of business in New York, New York. The sole members of SCHJS are DSBT Holdings LLC and Joshua Schupak. Upon information and belief, Mr. Schupak is a resident of the State of New York.

16. DSBT Holdings LLC is wholly owned by the DSBT 2011 Family Trust.

17. The DSBT 2011 Family Trust has three trustees: Isaac Sitt, Albert Dayan, and Betty Sitt. Isaac Sitt, Albert Dayan, and Betty Sitt are New York citizens.

18. The "administrative trustee" of the DSBT 2011 Family Trust is Christiana Trust, a Division of Wilmington Savings Fund Society, FSB. The home office of Christiana Trust is Delaware.

19. The beneficiaries of the DSBT 2011 Family Trust are the sons of Joseph J. Sitt—Jack, David, Joshua, and Daniel—all of whom are New York citizens.

20. Upon information and belief, Defendant Great Northern Insurance Company is a company formed under the laws of Indiana with its principal place of business in Whitehouse Station, New Jersey. Upon information and belief, at all relevant times hereto, Great Northern

was authorized to underwrite insurance policies covering risks in the State of New York. Upon information and belief, Great Northern has, at all relevant times, conducted business in the State of New York, including engaging in the business of selling insurance and investigating claims dealing with policyholders, property, or activities located in the State of New York.

21. Upon information and belief, Defendant Hiscox Insurance Company Inc. is a company formed under the laws of Illinois with its principal place of business in Chicago, Illinois. Upon information and belief, at all relevant times hereto, Hiscox was authorized to underwrite insurance policies covering risks in the State of New York. Upon information and belief, Hiscox has, at all relevant times, conducted business in the State of New York, including engaging in the business of selling insurance and investigating claims dealing with policyholders, property, or activities located in the State of New York.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

23. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

I. **Formation and Business of SCHJS**

24. For many years prior to the formation of SCHJS, Mr. Sitt had used Mr. Schupak to procure whiskey and wine.

25. Believing whiskey to be a strong investment property as worldwide interest and consumption grew and supplies were fixed (because it would have been necessary to distill it many years prior), in 2013 Mr. Sitt (acting through DSBT Holdings LLC, a trust which controls

a substantial amount of his assets) and Mr. Schupak formed SCHJS to purchase whiskey for investment.

26. Mr. Sitt and Thor generally establish single-purpose entities to manage most of their investments. The investment in whiskey was no different; SCHJS was the single-purpose entity formed to manage the investment. SCHJS has no employees and conducts no operations other than owning the property purchased by Mr. Schupak for the entity.

27. The SCHJS Operating Agreement called for Mr. Sitt (through DSBT) to contribute 70% of the initial capital contribution, and for profits to be split 50/50 between DSBT and Mr. Schupak. While Mr. Sitt would fund the majority of early purchases, the plan was for Mr. Schupak to eventually contribute more to purchases as well.

28. The Operating Agreement further provided that the principal place of business of SCHJS would be 25 West 39th St, 11th Floor, New York, New York—Thor's headquarters.

29. SCHJS conducted its business as follows: Mr. Schupak would send an email to Mr. Sitt and/or Marc Nudelman, Controller at Thor, with a spreadsheet listing the bottles he wanted to purchase and their price. Mr. Nudelman would then process Mr. Sitt's payment into the SCHJS bank account, and Mr. Schupak would withdraw the money to allegedly purchase the property.

30. This process repeated itself over 60 times between October 2013 and August 2017, with Mr. Sitt ultimately contributing $4,668,156 to the SCHJS account.

31. Beginning in 2017, Mr. Sitt began asking Mr. Schupak for an inventory of the SCHJS collection. Mr. Schupak told Mr. Sitt that it was a major project, but that he would provide the inventory.

32. Mr. Sitt followed up for several months for the inventory. The inventories Mr. Schupak eventually provided were woefully incomplete and difficult to understand, but Mr. Schupak continued to insist that all bottles could be accounted for. Mr. Sitt had prior experience with Mr. Schupak's disarray and disorganization, so in April 2018 he asked Ms. Berkowitz, Thor's risk manager, to oversee the process, get Mr. Schupak organized, and generate a complete inventory.

33. Ms. Berkowitz at first attempted to work with Mr. Schupak to inventory the property stored at multiple locations, but ultimately decided the best way to proceed was to consolidate the collection in one location, and began to do that.

34. While Mr. Schupak maintained that all bottles could be accounted for, by late 2018 Ms. Berkowitz's inventory process revealed only 4,293 bottles of the 10,035 whiskey bottles Mr. Schupak purported to have purchased. Based on the information Mr. Schupak had provided to Mr. Sitt, those bottles were purchased for $2,571,708.

35. The 4,293 bottles have been appraised to have a current value of $3,352,722. The total collection Mr. Schupak purported to have purchased has been appraised to have a current value of over $10 million—$9.84 million for the whiskey and $518,000 for the wine.[1]

36. On April 30, 2019, Ms. Berkowitz and one of Thor's outside counsel reported the facts of the loss in their possession to the New York Police Department. On May 7, 2019, Ms. Berkowitz was informed by the NYPD that they refused to file a police report because they believed the case to be a civil matter.

---

[1] A quantity of the wine was later discovered to have been paid for by Mr. Schupak but still in the custody of the winery. SCHJS informed Defendants of this development and is no longer making a claim for that wine.

**II.     SCHJS Insurance Coverage**

37.     On December 2, 2018, based on the results of Ms. Berkowitz's inventory process, Mr. Sitt concluded a loss had occurred and directed that notice be given under applicable insurance policies. SCHJS was insured under two separate insurance policies that potentially apply to this loss. Essentially, if the loss is viewed as a theft in that Mr. Schupak never purchased the bottles and took the money, or took the bottles, then Hiscox's crime policy provides coverage. If, on the other hand, the bottles were purchased and lost, Great Northern's property policy applies to the loss. Either way, SCHJS is entitled to coverage for the loss.

**A. The Hiscox Policy**

38.     Hiscox issued Commercial Crime Insurance Policy No. UC21327822.18 to Thor for the policy period August 15, 2018 to August 15, 2019 (the "Hiscox Policy," attached hereto as Exhibit A). The "Declarations" of the Hiscox Policy shows a limit of $5 million in coverage for "Employee Theft" subject to a $25,000 deductible.

39.     The "Crime Coverage Part" of the Hiscox Policy provides: "If a limit appears on the Declarations indicating **you** have purchased the coverage, **we** will pay up to the stated limit for any loss which exceeds the applicable **deductible** . . . for: A. loss of or damage to **money**, **securities**, or **other property**: 1. <u>Employee Theft</u>: sustained by **you** resulting directly from **theft** or **forgery** committed by an **employee**, whether identified or not, acting alone or in collusion with other persons . . . ."[2]

40.     The Hiscox Policy states in the section "Who is an insured" that "**you**, **your**, or **insured** means a **named insured** . . . ."

---

[2] Policy language in bold or underline in this Complaint appears that way in the respective policies.

8

41. While the **Named Insured** in the Declarations of the Hiscox Policy is Thor, Thor specifically negotiated for an endorsement providing coverage for its single-purpose investment entities. Endorsement 23, titled "Named Insured Added (Property Owner Entities)," adds several specified entities as **Named Insureds** and also provides: "**Named Insured** also means: . . . B. any entity that meets the following conditions: 1. the entity is the owner of a property that is also part owned or managed by **Thor Equities LLC or the Additional Named Insured(s) shown in the above Schedule**; and 2. the entity has no other employees or operations other than the ownership of the property."

42. Thor manages the whiskey and wine owned by SCHJS: Thor's headquarters is the principal place of SCHJS's business, and its employees provided the funds to purchase the collection, managed the SCHJS bank account, conducted the only conclusive inventory process, and marshalled the collection in its current location. As stated above, SCHJS has no other employees or operations other than ownership of the property. Thus, SCHJS is a **Named Insured** under Endorsement 23.

43. The Hiscox Policy defines **other property** as "any tangible property other than **money** or **securities** that has intrinsic value."

44. The Hiscox Policy defines **theft** as "the unlawful taking of property to its owner's deprivation."

45. Thor also specifically negotiated for the Hiscox Policy to provide employee theft coverage for partners or members in any single-purpose investment entity. Endorsement 5, the "Crime Elite Endorsement," provides: "**Employee** also means any natural person who is also a: 1. partner in a partnership that is an **Insured**; or 2. **member** of a limited liability company that is an **Insured**." The Hiscox Policy defines **member** as "an owner of a limited liability company

9

represented by its membership interest." As Mr. Schupak is a member of SCHJS, which is an **Insured**, he qualifies as an **employee** for the purposes of the employee theft coverage.

46. While the Hiscox Policy has an exclusion for "Acts Committed by Owners," Endorsement 5 expressly modifies that exclusion to include a "Carveout" for "Partner and Member Employees," meaning the exclusion does not apply to "a partner or **member** who is included as an **employee** by this Endorsement." Because Mr. Schupak is included as an **employee** by Endorsement 5, his acts do not trigger the Acts Committed by Owners exclusion.

### B. The Great Northern Policy

47. Great Northern issued Masterpiece Policy No. 14811109-01 to SCHJS, c/o Thor Equities, for the policy period July 2, 2018 to July 2, 2019 (the "Great Northern Policy," attached hereto as Exhibit B). The Great Northern Policy provides $5 million in blanket coverage for "valuable articles," subject only to a blanket limit per item of $50,000.

48. The Great Northern Policy provides: "This policy provides you with coverage against physical loss if your valuable articles are lost, damaged, or destroyed."

49. In the section entitled "Payment for a Loss," the Great Northern Policy provides: "For a covered loss to valuable articles with blanket coverage, we will pay the amount required to repair or replace the property, whichever is less, without deduction for depreciation."

50. The "Valuable Articles Coverage" section of the Great Northern Policy provides: "In Valuable Articles Coverage, a 'covered loss' includes **all risk** of physical loss to valuable articles unless stated otherwise or an exclusion applies."

51. The Great Northern Policy has exclusions for "loss caused intentionally by a person named in the Coverage Summary" and "loss caused by the taking or other misappropriation by or directed by a person named in the Coverage Summary." No person is named in the Coverage Summary of the Great Northern Policy.

**III.     SCHJS's Claims to Defendants**

52.     After the inventory process had concluded in late 2018 and Mr. Schupak's assurances that the entire collection could be accounted for proved false, SCHJS promptly made claims for the loss to both Hiscox and Great Northern.

53.     As part of those claims, SCHJS provided proofs of loss as required under the Policies setting forth the details and amounts of its loss.  Along with these proofs of loss, SCHJS produced hundreds of emails and other potentially relevant documents to provide the insurers with all possible information needed to adjust the claims.  In response to a request from Great Northern, SCHJS also directed its insurance broker to produce all relevant communications in its possession to Great Northern.

54.     Great Northern conducted multi-day examinations under oath of Mr. Sitt and Ms. Berkowitz and interviewed other witnesses.  While Great Northern was entitled to conduct the examinations under its Policy, and Mr. Sitt and Ms. Berkowitz appeared at the examinations to provide any facts in their possession to assist with Great Northern's investigation, they were surprised and disappointed that the focus of Great Northern's examinations was to find ways to avoid coverage, and trying to suggest that SCHJS withheld information at Policy inception and knew that Mr. Schupak had stolen money or whiskey in order to apply its misappropriation exclusion.  Mr. Sitt and Ms. Berkowitz explained they did not withhold any information, did not know anything was missing when the Policy was purchased (in fact, Mr. Schupak had repeatedly assured them *nothing* was missing), and did not know what happened to the money or whiskey, whether it had been stolen by Mr. Schupak or someone else, or whether it was damaged or lost.

11

55. Despite SCHJS's cooperation with every reasonable request for information throughout its nearly year-long investigation, Great Northern denied any coverage for SCHJS's claim by letter dated January 28, 2020.

56. Hiscox received all of the same information and documents provided to Great Northern with SCHJS's proof of loss, but it conducted no examinations under oath or other interviews to SCHJS's knowledge.

57. Instead, Hiscox asserted that SCHJS was not an **insured** under the Hiscox Policy, wholly ignoring Endorsement 23. After SCHJS responded that it qualified as a **named insured** under that endorsement, Hiscox still denied coverage, alleging that SCHJS had not timely submitted a proof of loss, and arguing—with no support in the Policy language or elsewhere—that SCHJS was not a **named insured** under Endorsement 23 because the word "property" therein exclusively means "real property," and SCHJS does not own real property. Hiscox also claimed the Acts Committed by Owners exclusion applied by quoting the language from the Policy form, not the amended language in Endorsement 5.

58. Although Hiscox has now conceded that SCHJS's proof of loss was timely (it was actually submitted one month *before* the Policy deadline), it has stubbornly persisted in its position that SCHJS is not insured under the Hiscox Policy.

59. Left with no choice, SCHJS now sues to obtain appropriate coverage from Great Northern and Hiscox. The loss must be covered under one (or both) of the Policies: If Mr. Schupak purchased the whiskey and it was lost, damaged, or stolen from him, that loss is covered under the Great Northern Policy. If Mr. Schupak never purchased the whiskey and stole the balance of the money he received from SCHJS, or bought whiskey and then stole it from SCHJS for his own use or to give to other clients, that loss is covered under the Hiscox Policy. If

it turns out to be a combination of the two possibilities, both Hiscox and Great Northern would be responsible for a portion of SCHJS's loss.

## FIRST CAUSE OF ACTION

(Breach of Contract against Hiscox)

60. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

61. The Hiscox Policy constitutes a valid and enforceable contract between SCHJS and Hiscox because SCHJS is a named insured under the Hiscox Policy.

62. SCHJS provided prompt notice of the loss and otherwise performed all obligations required of it under the Hiscox Policy.

63. Under the terms of the Hiscox Policy, Hiscox must pay up to $5,000,000 for any loss covered under the Hiscox Policy.

64. As described above, SCHJS has sustained a loss covered under the Hiscox Policy.

65. Hiscox has not paid any amounts to SCHJS in connection with its claim. By failing to provide coverage for the claim, Hiscox has breached the terms of the Hiscox Policy.

66. As a direct, proximate, and legal result of Hiscox's breach of contract, which is continuing as of the date of this Complaint, SCHJS suffered damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

## SECOND CAUSE OF ACTION

(Declaratory Judgment against Hiscox)

67. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

68. Pursuant to the terms of the Hiscox Policy, Hiscox is obligated to pay, up to the limit of liability, for a claim that satisfies the insuring agreements of the Hiscox Policy and is not otherwise excluded from coverage.

69. As detailed above, the facts of the claim come within the insuring agreements of the Hiscox Policy and coverage for the claim is not otherwise excluded in the Hiscox Policy.

70. Hiscox disputes its legal obligation to pay SCHJS's claim.

71. Pursuant to 28 U.S.C. § 2201, SCHJS is entitled to a declaration by this Court of Hiscox's obligations under its Policy.

72. An actionable and justiciable controversy exists between SCHJS and Hiscox concerning the proper construction of the Hiscox Policy, and the rights and obligations of the parties thereto, with respect to the claim related to SCHJS's loss of whiskey and/or wine.

73. Pursuant to 28 U.S.C. § 2201, this Court should enter a declaratory judgment in favor of SCHJS and against Hiscox, declaring that there is coverage available for SCHJS's claim under the Hiscox Policy, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper. Such a declaration would resolve the current controversy between SCHJS and Hiscox.

## THIRD CAUSE OF ACTION

(Breach of Contract against Great Northern)

74. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

75. The Great Northern Policy constitutes a valid and enforceable contract between SCHJS and Great Northern because SCHJS is the named insured under the Great Northern Policy.

76. SCHJS paid all premiums, provided prompt notice of the loss, and otherwise performed all obligations required of it under the Great Northern Policy.

77. Under the terms of the Great Northern Policy, Great Northern must pay up to $5,000,000 (subject only to the blanket per-item limit of $50,000) for any loss covered under the Great Northern Policy.

78. As described above, SCHJS has sustained a loss covered under the Great Northern Policy.

79. Great Northern has not paid any amounts to SCHJS in connection with its claim. By failing to provide coverage for the claim, Great Northern has breached the terms of the Great Northern Policy.

80. As a direct, proximate, and legal result of Great Northern's breach of contract, which is continuing as of the date of this Complaint, SCHJS has suffered damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

## FOURTH CAUSE OF ACTION

(Declaratory Judgment against Great Northern)

81. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

82. Pursuant to the terms of the Great Northern Policy, Great Northern is obligated to pay, up to the limit of liability, for a claim that satisfies the insuring agreements of the Great Northern Policy and is not otherwise excluded from coverage.

83. As detailed above, the facts of the claim come within the insuring agreements of the Great Northern Policy and coverage for the claim is not otherwise excluded in the Great Northern Policy.

84. Great Northern disputes its legal obligation to pay SCHJS's claim.

85. Pursuant to 28 U.S.C. § 2201, SCHJS is entitled to a declaration by this Court of Great Northern's obligations under its Policy.

86. An actionable and justiciable controversy exists between SCHJS and Great Northern concerning the proper construction of the Great Northern Policy, and the rights and obligations of the parties thereto, with respect to the claim related to SCHJS's loss of whiskey and/or wine.

87. Pursuant to 28 U.S.C. § 2201, this Court should enter a declaratory judgment in favor of SCHJS and against Great Northern, declaring that there is coverage available for SCHJS's claim under the Great Northern Policy, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper. Such a declaration would resolve the current controversy between SCHJS and Great Northern.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

(a) On the First Cause of Action, Plaintiff requests that the Court enter judgment against Hiscox, awarding Plaintiff damages in an amount to be determined at trial, but not less than $75,000, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law;

(b) On the Second Cause of Action, Plaintiff requests that the Court enter a declaratory judgment in favor of Plaintiff against Hiscox, declaring that Hiscox is required to pay Plaintiff, up to the applicable limits of the Hiscox Policy, for claimed amounts under the Hiscox Policy;

(c) On the Third Cause of Action, Plaintiff requests that the Court enter judgment against Great Northern, awarding Plaintiff damages in an amount to be determined at trial, but

not less than $75,000, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law;

(d) On the Fourth Cause of Action, Plaintiff requests that the Court enter a declaratory judgment in favor of Plaintiff against Great Northern, declaring that Great Northern is required to pay Plaintiff, up to the applicable limits of the Great Northern Policy, for claimed amounts under the Great Northern Policy; and

(e) Additionally, Plaintiff requests such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: New York, New York<br>February 13, 2020 | MCKOOL SMITH, P.C.<br><br>/s/ Robin L. Cohen<br>Robin L. Cohen<br>Kenneth H. Frenchman<br>Alexander M. Sugzda<br>One Manhattan West<br>395 9th Avenue, 50th Floor<br>New York, New York 10001<br>Tel: (212) 402-9400<br>Fax: (212) 402-9444<br>rcohen@mckoolsmith.com<br>kfrenchman@mckoolsmith.com<br>asugzda@mckoolsmith.com<br><br>*Attorneys for Plaintiff SCHJS LLC* |